Filed 3/10/15  P. v. Limon CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060171 |
| v. | (Super.Ct.No. INF1201390) |
| JUAN MANUEL LIMON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Harold W. Hopp, Judge. Affirmed.

Gail K. Ganaja, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Junichi P. Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Juan Manuel Limon of inflicting injury on a spouse/cohabitant as a felony (Pen. Code, § 273.5, subdivision (a)) and of misdemeanor intimidation of a witness and battery, the latter two as misdemeanors. (Pen. Code, §§ 136.1, 242.) Subsequently, the trial court granted defendant's motion under Penal Code section 17, subdivision (b)(4), and reduced the felony conviction to a misdemeanor. Defendant was placed on summary probation with specified terms.

In this appeal, defendant argues that the trial court erroneously admitted the tape of a "911" call made by his daughter J. as a "spontaneous statement" or "excited utterance" under Evidence Code section 1240. We disagree, and affirm the judgment.

## STATEMENT OF FACTS

The first witness for the prosecution was defendant's daughter Julissa, 20 years of age. She testified that while washing dishes, she heard her parents arguing in loud voices over whether to go and wash the car right then, or after the victim, Maria Limon, finished the laundry. At the time, Maria Limon was sitting on the floor of the hallway sorting or straightening clothes.[1] Julissa was not concerned until she heard her mother say "Help me" or "Help me up." The victim then said "You hurt me," or "You are hurting me," at which point Julissa ran to see what was happening. She saw defendant on top of the victim and pulled him off and "threw him really hard on the couch."

---

[1] This was the evidence given by family members. However, the responding deputy did not observe any clothing on the floor.

2

Julissa asked defendant why he was hitting the victim, and after replying "It is not like that," defendant pushed her away. At this point Julissa said that she was going to call "911," and, according to her testimony, he then became angry. Defendant grabbed her by the arm hard enough to leave a mark, but she did complete the call.

The tape of the call was played; it reflected that Julissa told the dispatcher that her parents were "fighting" and that defendant "just hit my mom, and he hit me," later confirming that defendant had struck both of them with his hands. After the tape was played, Julissa admitted that defendant had hit her in the face. She also admitted that she had testified at the preliminary hearing that defendant had been choking her mother, although she maintained at trial that this was not true. She did admit that she saw red marks on her mother's neck, but maintained that they were not the result of being choked.

The victim's own testimony was almost completely exculpatory. She denied any argument at all and testified that defendant, who used a cane, simply fell on her as he was trying to help her up. She also denied that defendant choked her. She explained the red marks on her face or neck as being sun-related.

The responding officer testified that when she arrived, Julissa was outside crying and holding her arm, which bore a red mark. The officer could also see a bruise forming on Julissa's cheek. The officer testified that Julissa told her that she had seen defendant choking the victim, placing her hands in a "C" form to demonstrate. Julissa stated at the time that defendant hit her on both sides of her face with his open hands.

The officer also saw red marks on either side of the victim's neck.

3

The final witness was J., aged 13 at the time of trial. She testified that she had been in her room and had only come out "way after everything" when she heard her sister, Julissa, crying. Defendant was saying to Julissa "Come inside." She called police because "in my school, they tell us like when you see arguing to call the police." She never saw defendant hitting the victim.

J. was impeached with the transcript of her own call to "911," the admission of which is the subject of this appeal. In that call, J.'s first statement after the dispatcher says "911" was "Yes my dad is hitting my mom please come." J. terminated the call shortly after giving the family's address.

THE EVIDENCE CODE SECTION 402 HEARING

Prior to trial, the admissibility of J.'s call was tested at a hearing conducted pursuant to Evidence Code section 402.[2] J. testified that she heard screams and became worried "and I saw my sister crying, and she was running outside, and my dad said, 'What is going on?' And he said 'Let me explain what is going on.' And my sister just didn't want to say anything. And then she called the police . . . ." Seeing her sister crying caused her to panic, so she called 911. She denied seeing her father hit the victim. The tape was played, and a male implicitly identified as defendant was heard yelling in

---

[2] That section provides in pertinent part "(a) When the existence of a preliminary fact is disputed, its existence or nonexistence shall be determined as provided in this article.

"(b) The court may hear and determine the question of the admissibility of evidence . . . ."

4

the background. She explained that she heard her father saying to Julissa "I am not hitting your mom," and that frightened her, so she made the 911 call.

It was also established that J. had been in her room when the screaming occurred and that she ran into the kitchen to make the call. By that time, according to her, the victim was in the living room with defendant and Julissa.

The trial court ruled the tape admissible as a spontaneous statement pursuant to Evidence Code section 1240.[3] The court relied on the included statement that "my dad is hitting my mom" on its face clearly reflected an immediate perception and that (presumably acknowledging the physical proximity of J. to the events) "it seems clear that [J.] perceived that her parents were fighting. Her father was hitting her mother." The court also noted that perception did not have to be limited to *visual* perception.

## DISCUSSION

The primary requirements for admissibility under Evidence Code section 1240 are that the declarant must have perceived the act, condition, or event described, and the statement must have been made in a state of stress or excitement produced by a startling event, without time for deliberation or reflection. (*People v. Lynch* (2010) 50 Cal.4th 693, 751-752.) We review for abuse of discretion, and where the trial court makes

---

[3] "Evidence of a statement is not made inadmissible by the hearsay rule if the statement:
(a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and
(b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."

5

express or implied findings of fact, we will uphold such findings if supported by substantial evidence. (*People v. Stanphill* (2009) 170 Cal.App.4th 61, 73.)

There is little dispute over whether J. made the 911 call in a state of excitement responsive to the events she perceived. The issue is whether there is substantial evidence that she *personally perceived* the events she recounted to the 911 operator—specifically, that defendant was hitting the victim. We find that there was.

As the trial court noted, perception is not limited to sight, but includes the acquisition of information through any of the senses. (Evid. Code, § 170.) The family apartment was described as "small," with the bedrooms opening directly off the hallway in which the victim was allegedly seated at the time of the assault. It is reasonable to assume at the very least that J. *heard* the attack,[4] and in fact it is also reasonable to assume that she *saw* it, as she must have virtually stumbled over the victim when she came out of her room.[5]

---

[4] Defendant correctly asserts that there was no direct evidence that J. heard the details of the assault. This is not surprising, given J.'s clear reluctance to incriminate defendant. Hence, the trial court could properly consider the physical circumstances of the incident in evaluating whether J. could have, and probably did, "perceive" the attack through any of her senses.

[5] J. testified at the Evidence Code section 402 hearing that the victim was sitting down in the living room by the time she emerged. However, J.'s testimony bore far fewer indicia of truthfulness than her spontaneous statement and was properly discounted by the trial court. It is apparent from the testimony that J., Julissa, and the victim were primarily concerned at trial to preserve the family unit and prevent defendant's conviction.

Furthermore, as the trial court also noted, Evidence Code section 1240 also applies to "nested" spontaneous statements. Thus, in *People v. Roldan* (2005) 35 Cal.4th 646, 713-714, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 (*Roldan*), the witness called police and told them about the subject robbery, relating statements from her son and another person who were shouting that they had been robbed. Held, the witness (who had been present when the robbery began) and the two others were all speaking under conditions of stress and excitement, so that *both* levels of what would otherwise be hearsay were admissible under Evidence Code section 1240. Here, J. was asked by defense counsel at the Evidence Code section 402 hearing whether she had heard Julissa "making the statement that your dad had hit your mom." Her response was "Yes, but she wouldn't get—" Defense counsel interrupted, then asking "Did you hear that before you made the phone call to 911?" and J. responded "No."[6] As is true of her testimony as a whole, this makes no sense. The trial court was fully justified in believing the "Yes," and disbelieving the explanation that Julissa's accusatory statement came later. J.'s explanation that she had called 911 because her sister was crying and this frightened her was illogical and incredible. It is far more likely that she called 911 because she *either* directly perceived her father assaulting the victim, *or* that she was relying on Julissa's angry recrimination directed at her father—a statement clearly admissible under Evidence Code section 1240 and thus under *Roldan*.

---

[6] In his reply brief, defendant cites only to J.'s "No" response, ignoring the "Yes, but she wouldn't get—" response.

Accordingly, we find that J.'s call to 911 was properly presented to the jury. We need not reach the People's fallback position of "harmless error" under *People v. Watson* (1956) 46 Cal.2d 818, 836. Were we to do so, however, we would have no difficulty in concluding that the doctrine applies. J.'s statement that defendant was hitting her mother was merely duplicative of Julissa's more detailed and coherent statements in the call *she* made to 911. Julissa's call was also consistent with her statements to the investigating officer on the site, and the officer's testimony of the red marks and bruises borne by both the victim and Julissa was further corroboration. The jury evidently had no difficulty concluding that the trial testimony by the family members was untrue, and it is unlikely that J.'s brief statement influenced this conclusion in any measurable respect.[7]

---

[7] Pursuant to defendant's request, in this portion of our analysis we have not considered those items of evidence cited by the People but which were elicited at the Evidence Code section 402 hearing and not presented to the jury.

8

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:

KING
J.

CODRINGTON
J

9